UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

LUIS MIGUEL HUMMEL and 5th SUN
GARDENS, LLC,

          Plaintiffs,

v.

MINNESOTA DEPARTMENT OF
AGRICULTURE; THOM PETERSEN, in
his official capacity as Commissioner of
the Minnesota Department of
Agriculture; DOUG SPANIER, in his
individual and official capacities;
MARGARET WIATROWSKI, in her
individual and official capacities;
ANTHONY CORTILET in his individual
and official capacities; and JANE AND
JOHN DOE in their individual capacities,

          Defendants.

Case No. 19-CV-1431 (PJS/HB)

ORDER

---

Jason C. Tarasek, THOMPSON TARASEK LEE-O'HALLORAN PLLC D/B/A
MINNESOTA CANNABIS LAW, for plaintiffs.

Christina M. Brown and Colin Patrick O'Donovan, OFFICE OF THE
MINNESOTA ATTORNEY GENERAL, for defendants.

Plaintiff Luis Miguel Hummel operates 5th Sun Gardens, LLC—an industrial

hemp farm located in Lanesboro, Minnesota. Hummel and 5th Sun Gardens

(collectively, "Hummel") were licensed to participate in the Industrial Hemp Pilot

Program ("Pilot Program") that is administered by the Minnesota Department of

Agriculture ("MDA"). MDA revoked Hummel's license after receiving a report from a law-enforcement agency that Hummel had violated federal and state law and program guidelines. After MDA denied Hummel's request for a hearing, Hummel brought this lawsuit, alleging (among other things) that MDA and several of its employees had deprived him of property without due process. This matter is before the Court on defendants' motion to dismiss. For the reasons that follow, defendants' motion is granted in part and denied in part.

## I. BACKGROUND

Federal law authorizes each state to establish "a pilot program to study the growth, cultivation, or marketing of industrial hemp." 7 U.S.C. § 5940(a)(1). Pursuant to this authorization, the Minnesota Legislature enacted the Industrial Hemp Development Act, Minn. Stat § 18K.01 et seq. Section 18K.09 of the Act establishes a pilot program administered by MDA.[1] Someone who wishes to participate in the Pilot Program must obtain a license—and, to obtain a license, he must enter into a memorandum of understanding ("MOU") with MDA. As the MOU explains, the Pilot

---

[1]Hummel argues that his license was issued pursuant to Minn. Stat. § 18K.04, which appears to set forth the procedures that MDA will follow when issuing licenses to individuals to grow industrial hemp *outside* of the Pilot Program (after the federal government legalizes such activity). MDA argues that Hummel's license was issued pursuant to § 18K.09 and authorizes him to grow industrial hemp only *within* the Pilot Program. MDA is clearly correct. The memorandum of understanding—signed by both parties—explicitly cites § 18K.09 (not § 18K.04) as the authorizing statute and repeatedly refers to the "pilot program" and "pilot participants." ECF No. 19 at 4-15.

Program "establishes an agency relationship with Pilot Participants, who operate as extensions of MDA for purposes of researching the growth, cultivation, and marketing of industrial hemp." ECF No. 19 at 4. A license to participate in the program is effective until the last day of the calendar year in which it is issued, at which point participants must reapply and enter into a new MOU. *Id.* at 7.

In January 2019, Hummel was issued a license to grow and process industrial hemp as a participant in the Pilot Program. On March 15, 2019, a Fillmore County sheriff's deputy conducted a traffic stop on an individual who claimed to be transporting and marketing hemp products on Hummel's behalf. The deputy seized the products, which included "wax" and "vape tips." The products were later tested and found to have delta-9 tetrahydrocannabinol ("THC") concentrations of 3.6 percent and 3.11 percent respectively—far in excess of the 0.3 percent maximum concentration allowed by program guidelines and federal and state law. *See* 7 U.S.C. § 5940(a)(2); Minn. Stat. § 18K.02, subd. 3; ECF No. 19 at 8-14. Fillmore County notified MDA, and MDA revoked Hummel's license to grow industrial hemp. ECF No. 19 at 26. MDA also directed Hummel to destroy his current crop. *Id.*

Hummel learned that his license had been revoked in a letter that was dated May 1, 2019, and signed by defendant Doug Spanier, Department Counsel for MDA. In response, Hummel invoked his constitutional right to due process and demanded that

MDA conduct an evidentiary hearing regarding the events that had led to the

revocation.  *Id*. at 29-30.  Hummel's demand for a hearing was rejected.  *Id*. at 32-33.

Hummel then filed this action under 42 U.S.C. § 1983, alleging that MDA and its

employees had violated his rights to both substantive and procedural due process

under both the United States and Minnesota Constitutions.  Hummel seeks a

declaratory judgment, injunctive relief, and monetary damages.  Defendants have

moved to dismiss Hummel's amended complaint under Fed. R. Civ. P. 12(b)(1) and

12(b)(6).

## II.  ANALYSIS

### *A.  Standard of Review*

In ruling on a motion to dismiss for lack of subject-matter jurisdiction, a court is

free to weigh the evidence in order to decide whether that evidence establishes that it

has jurisdiction.  *See Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).  In

reviewing a motion to dismiss for failure to state a claim, a court must accept as true all

factual allegations in the amended complaint and draw all reasonable inferences in

favor of the non-moving party.  *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir.

2008).  The allegations must be sufficient to "raise a right to relief above the speculative

level" and to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555, 570 (2007).  In assessing the plausibility of a claim, the Court

need not accept as true any allegation that is merely "conclusory." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

Hummel argues that, pursuant to Fed. R. Civ. P. 12(d), defendants have converted their motion to dismiss into a summary-judgment motion by introducing matters outside of the pleadings. But in ruling on a motion to dismiss, the Court may consider documents necessarily embraced by the amended complaint and matters of public record without converting the motion into one for summary judgment. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). Those are the only matters that the Court has considered, and thus the Court will not treat defendants' motion to dismiss as a summary-judgment motion.

### B. *Jurisdiction*

Hummel has sued MDA and four of its employees: Thom Petersen, Doug Spanier, Margaret Wiatrowski, and Anthony Cortilet. The employees are sued in both their official and individual capacities, with the exception of Petersen, who is sued only in his official capacity.

Under the Eleventh Amendment, the State of Minnesota and its agencies (including MDA) are immune from suit in federal court unless the State has consented to be sued or Congress has expressly abrogated the State's immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("[A] suit in which the State or

one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). Hummel points to no evidence of consent or abrogation, and thus all of his claims against MDA are dismissed for lack of subject-matter jurisdiction. *See Quern v. Jordan*, 440 U.S. 332, 339-41 (1979) (holding that § 1983 does not abrogate States' Eleventh Amendment immunity); *Eaton v. Minn. Att'y Gen.'s Office*, No. 10-CV-1804 (JRT/FLN), 2011 WL 1195777, at *3 (D. Minn. Mar. 28, 2011) ("The State of Minnesota has not waived its Eleventh Amendment immunity from suit in federal court for federal constitutional claims." (citing *DeGidio v. Perpich*, 612 F. Supp. 1383, 1388-89 (D. Minn. 1985))).

The Eleventh Amendment also bars claims seeking damages from State officials sued in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Such claims are barred because "a judgment against a public servant in his official capacity imposes liability on the entity that he represents." *Id.* (quotations and citations omitted). The Court therefore does not have subject-matter jurisdiction over the official-capacity claims against the employees insofar as those claims seek damages.[2]

---

[2]Claims against MDA and claims for damages against individual defendants sued in their official capacities are also barred for the independently sufficient reason that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). But "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." *Id.* at 71 n.10 (quotations and citations omitted).

Under *Ex parte Young*, 209 U.S. 123 (1908), however, the Court does have subject-matter jurisdiction over the official-capacity claims insofar as those claims seek declaratory or injunctive relief in order to end a continuing violation of federal law.  *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996).  Specifically, the Court has subject-matter jurisdiction over Hummel's official-capacity claims insofar as he seeks an injunction "precluding the Defendants from further impugning" his constitutional rights and a declaration that "Defendants must provide the Plaintiffs with notice and opportunity to be heard."  ECF No. 15 at 10.

The Eleventh Amendment does not bar claims for damages against state officials sued in their individual capacities—as such claims do not seek to impose liability on the state agency that employs those individuals—and thus the Court can exercise subject-matter jurisdiction over the individual-capacity claims against defendants Spanier, Wiatrowski, and Cortilet.  *See Nix v. Norman*, 879 F.2d 429, 433 n.3 (8th Cir. 1989) (claims seeking damages from state officials in their individual capacities are not barred by Eleventh Amendment).

*C.  Merits*

To survive defendants' motion to dismiss his official-capacity claims seeking prospective declaratory or injunctive relief , Hummel must plausibly allege that defendants are depriving him of his constitutional right to due process.  Hummel's

burden with respect to his individual-capacity claims is higher, as defendants have

qualified immunity from those claims unless Hummel can plausibly allege that

defendants deprived him of a "'clearly established statutory or constitutional right[] of

which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231

(2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Hummel alleges that he was deprived of his rights to procedural and substantive

due process under the Fourteenth Amendment to the United States Constitution[3] and

---

[3]Hummel also alleges violations of the Fifth Amendment. But the Fifth Amendment's Due Process Clause applies only to federal officials, not to the state officials whom Hummel has sued. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"); *see also Jones v. Norton*, 809 F.3d 564, 575 n.3 (10th Cir. 2015) ("Although Plaintiffs briefed for this court the protections of substantive due process under the Fifth Amendment, we interpret their arguments under the Fourteenth Amendment because they seek relief against state, rather than federal, actors."); *Massey v. Ojaniit*, 759 F.3d 343, 354 n.5 (4th Cir. 2014) ("The complaint asserts claims against state, rather than federal, actors. Thus, although Count I refers to both the Fifth and Fourteenth Amendments, Massey's relevant due process protections are found in the Fourteenth, rather than the Fifth, Amendment.").

The Court reminds Hummel's counsel of their obligations under Fed. R. Civ. P. 11. Even cursory legal research would have disclosed that many of the claims that they have asserted—such as all of the claims against MDA (plainly barred by the Eleventh Amendment), the official-capacity claims for damages (ditto), the claims under the Due Process Clause of the Fifth Amendment (which does not apply to any of the defendants), and the claims under the Minnesota Constitution (there is no private right of action)—were not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). The Court expects better from Hummel's counsel going forward.

under Article 1, Section 7 of the Minnesota Constitution.  In response, defendants argue that, when Hummel executed the MOU, he waived his right to sue for violations of his constitutional rights.  Defendants further argue that, even if Hummel did not waive his right to sue, his constitutional claims are meritless and, in any event, barred by qualified immunity.  The Court considers each argument in turn.

1. Waiver

Defendants argue that Hummel waived his right to sue for constitutional violations when he entered into the MOU with MDA.  Defendants' argument is based on paragraph 2.I. of the MOU, in which Hummel agreed that, in return for being permitted to participate in the Pilot Program, he would "[i]ndemnify, hold harmless, and release forever the State of Minnesota, its departments, agencies, officers, employees, and agents of any kind from all liability claims arising out of [Hummel's] actions involving the cultivation and distribution of industrial hemp."

"Contractual clauses purporting to waive constitutional rights must be clear and unambiguous." *In re Workers' Comp. Refund*, 46 F.3d 813, 819 (8th Cir. 1995) (citations omitted).  "[T]he test for a waiver of constitutional rights . . . is whether 'the facts and circumstances surrounding the waiver make it clear that the party foregoing its rights has done so of its own volition, with full understanding of the consequences of its waiver.'" *Ruzicka v. Conde Nast Publ'ns, Inc.*, 733 F. Supp. 1289, 1297 (D. Minn. 1990)

(quoting *Erie Telecomms., Inc. v. City of Erie*, 853 F.2d 1084, 1096 (3d Cir. 1988)).  And "in the civil no less than the criminal area, courts indulge every reasonable presumption against waiver."  *Fuentes v. Shevin*, 407 U.S. 67, 94 n.31 (1972) (quotations and citations omitted).

Paragraph 2.I. falls short of a "clear and unambiguous" waiver of Hummel's constitutional rights.  To begin with, paragraph 2.I. appears to be an *indemnification* provision, not a *waiver* provision.  It says, in essence, that if the State is held liable to someone because of something that Hummel does, then Hummel will indemnify the State.  Paragraph 2.I. does not mention any right of Hummel's, much less provide clear notice to Hummel that he is giving up that right.

Defendants appear to rely on the fact that paragraph 2.I. obligates Hummel not merely to "[i]ndemnify" and "hold harmless" the State from "liability claims" arising out of Hummel's activities, but also to "release forever" the State from those claims. The State apparently believes that, in agreeing to this language, Hummel not only agreed to indemnify the State from liability to third parties, but also gave up his right to sue the State if it violated his constitutional rights.

If this language can indeed be read to waive one or more rights of Hummel's— something the Court doubts—it certainly does not do so clearly and unambiguously. Moreover, even if this language contained a clear waiver, that waiver would not apply

to this particular lawsuit.  In paragraph 2.I., Hummel agrees to "release forever the State of Minnesota" not from *all* liability claims, but only from liability claims "arising out of [Hummel's] actions involving the cultivation and distribution of industrial hemp."  But this lawsuit does not arise out of any action by *Hummel*; it arises out of an action by *the State*—specifically, the *State's* refusal to afford a hearing to Hummel, either before or after revoking his license.[4]  In other words, if the State were to be held "liable," it would not be held liable because of something that Hummel did, but because of something that the State itself did.

Again, "a waiver of constitutional rights in any context must, at the very least, be clear."  *Fuentes*, 407 U.S. at 95.  Paragraph 2.I. is not a "clear" waiver of Hummel's right not to be deprived of his property without due process.  For that reason, the Court holds that, when Hummel executed the MOU, he did not waive his right to bring the claims that he is asserting in this lawsuit.

## 2.  Federal Substantive Due Process Claim

Hummel alleges that, when defendants revoked his license, they deprived him of his right to substantive due process in violation of the Fourteenth Amendment.  As Hummel acknowledged in his briefing, a plaintiff seeking to establish a deprivation of substantive due process faces an extremely high bar.  "[T]he theory of substantive due

---

[4]The Court also notes that Hummel's purported waiver extends only to "*liability* claims," language that may not apply to claims for declaratory and injunctive relief.

process is properly reserved for truly egregious and extraordinary cases." *Myers v. Scott Cty.*, 868 F.2d 1017, 1018 (8th Cir. 1989). To state a claim, Hummel must establish both that defendants' conduct was "conscience-shocking" and that defendants "violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Slusarchuk v. Hoff*, 346 F.3d 1178, 1181-82 (8th Cir. 2003) (quotations and citations omitted).

Hummel has not come close to establishing either prong. To begin with, defendants' decision to revoke Hummel's license without a hearing cannot be characterized as "conscience shocking." Defendants temporarily suspended Hummel's license to grow industrial hemp as part of a government-administered pilot program after receiving a report from a sheriff's office that Hummel was distributing hemp products containing more than ten times the THC concentration authorized by law. It may be that defendants acted too hastily or on too little information, and it may be that defendants should have provided a hearing to Hummel, either before or after revoking his license. But their decisions were neither egregious nor outrageous. To the contrary, defendants made run-of-the-mill decisions regarding the administration of a new government program. *See Karsjens v. Piper*, 845 F.3d 394, 403 (8th Cir. 2017) ("To determine if the actions were conscience-shocking, the district court should consider

whether the state defendants' actions were egregious or outrageous." (quotations and citations omitted)).

Hummel has also not established that he was denied a "fundamental right[]" that is "deeply rooted in this Nation's history and tradition." *Slusarchuk*, 346 F.3d at 1182. Hummel challenges his inability to continue to participate in a temporary, government-administered research program—created by federal and state statutes passed in 2014 and 2015, respectively—for the purpose of studying industrial hemp. This is nothing like being deprived of the right to marry or bear children—"fundamental rights" that are "deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997).

For these reasons, the Court dismisses Hummel's claim that he was deprived of substantive due process in violation of the Fourteenth Amendment.

### 3. Federal Procedural Due Process Claim

Hummel next alleges that defendants violated his right to procedural due process under the Fourteenth Amendment by revoking his license without a hearing. To prevail on this claim, Hummel must establish (1) that defendants deprived him of a property interest protected by the Fourteenth Amendment and (2) that he was deprived of that property interest without adequate process. *Krentz v. Robertson Fire Prot. Dist.*, 228 F.3d 897, 902 (8th Cir. 2000). In moving to dismiss Hummel's procedural-due-

process claim, defendants argue only that Hummel did not have a constitutionally protected property interest in his license to participate in the Pilot Program.  Defendants do not argue that, *if* Hummel had such an interest, he was afforded adequate procedural protections.

"To have a constitutionally cognizable property interest in a right or benefit, a person must have 'a legitimate claim of entitlement to it.'"  *Austell v. Sprenger*, 690 F.3d 929, 935 (8th Cir. 2012) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).  Whether Hummel had a legitimate claim of entitlement to his license depends on the degree of discretion that MDA retained to revoke his license before the license expired at the end of the calendar year.  *See Minneapolis Taxi Owners Coal., Inc. v. City of Minneapolis*, 572 F.3d 502, 510 (8th Cir. 2009) (explaining that the relevant inquiry is whether the state actor's discretion has been curtailed "in such a way as to create a protected property interest").  To answer that question, the Court looks to the terms of the MOU.

The MOU appears to limit MDA's discretion to revoke a license by setting forth specific conditions under which a license can be revoked.  For example:

- In paragraph 2.A., the MOU states that "[f]ailure to follow [program] guidelines may result in loss of license and/or enforcement proceedings, up to and including seizure and destruction of industrial hemp material, penalties, and criminal prosecution."

- In paragraph 2.H., the MOU states that "if the Pilot Participant fails to abide by any of [the terms of the agreement], the MDA shall be able to withdraw from this MOU without recourse by the Pilot Participant and may result in Pilot Participant being removed or excluded from participation in the Industrial Hemp Pilot Program and/or hemp seed, grain, plants, or other materials being confiscated or destroyed."

- In paragraph 2.J., pilot participants agree to destroy or dispose of any "crop, plant, plant material, grain, or seed determined by MDA or law enforcement to be non-compliant with applicable laws, regulations, or this agreement." And

- In paragraph XI of Attachment A, MDA explains that anyone growing industrial hemp in unapproved locations may be subject to license revocation; that "violations of this contract may result in revocation"; and that anyone "utilizing industrial hemp in any manner outside of the scope of these guidelines or in contravention of these guidelines" may be subjected to license revocation.

ECF No. 19 at 5-6, 14.

By identifying—repeatedly and in detail—the circumstances under which MDA can revoke a license, the MOU implicitly limits MDA's authority to revoke a license to those circumstances.  Put differently, if MDA had unfettered discretion to revoke licenses, then these provisions would serve no purpose other than to mislead participants into believing that MDA did not have such discretion.

The only language in the MOU that might plausibly be read to suggest that MDA has unfettered discretion to revoke a participant's license appears in paragraph 2.E.  In that paragraph, participants agree that

MDA has ultimate discretion with respect to which pilot participants are included in MDA industrial hemp pilot program and agree that MDA can de-register a site used to store, cultivate, or process industrial hemp at any time and for any reason, and confiscate hemp seed if Pilot Participant operates in violation of the pilot program or other state and federal laws.

ECF No. 19 at 5-6.

This provision is poorly drafted, and its meaning is not entirely clear. The first part of the sentence—which states that MDA has "ultimate discretion with respect to which pilot participants are *included* in MDA industrial hemp pilot program" (emphasis added)—is most naturally read as addressing MDA's discretion to determine which applicants will receive licenses in the first instance. After all, the second part of the sentence addresses when participants can be kicked out of the program—specifically, when MDA can "de-register a site" or "confiscate hemp seed." If the word "included" in the first part of the sentence was meant to address both the granting and the revocation of licenses, then the second part of the sentence would serve no purpose.

As noted, the second part of the sentence provides that MDA "can de-register a site used to store, cultivate, or process industrial hemp at any time and for any reason, and confiscate hemp seed if Pilot Participant operates in violation of the pilot program or other state and federal laws." This language lends itself to two possible interpretations: First, this language might be understood to mean that (1) MDA can de-

register a site "at any time and for any reason" and (2) MDA can confiscate hemp seed only if the participant violates the law or a program guideline. Second, this language might be understood to mean that MDA can de-register a site and confiscate hemp seed "at any time and for any reason," provided that the pilot participant has violated the law or a program guideline.

Read in isolation, the first interpretation is unquestionably the more natural. But this language cannot be read in isolation. Instead, it must be read in connection with all of the other provisions of the MOU, including the multiple provisions that clearly imply that participants will *not* be kicked out of the program unless they have violated the law or a program guideline. *See Does v. Gillespie*, 867 F.3d 1034, 1043 (8th Cir. 2017) ("'Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts.'" (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012))).

Reading the disputed language to mean that MDA can remove a participant from the program "at any time and for any reason" would, at best, render superfluous several other provisions of the MOU—and, at worst, create conflicts among provisions of the MOU. Reading the disputed language to mean that MDA has complete

discretion to remove a participant from the program *after* that participant violates the law or a program guideline would harmonize all of the relevant provisions. The Court therefore gives the disputed language the latter reading.

As interpreted by the Court, the MOU limits the discretion of MDA to revoke a license to participate in the Pilot Program; specifically, MDA may not revoke a license unless the participant has violated the law or a program guideline. Because MDA's discretion to revoke was limited, Hummel had more than "a unilateral expectation" that his license would remain effective until the end of the calendar year. Instead, Hummel had a property interest protected under the Fourteenth Amendment. *See Roth*, 408 U.S. at 577.

That, of course, does not end the constitutional inquiry, as it may be that the Due Process Clause did not require MDA to provide a hearing to Hummel, either before or after revoking his license. *Cf. Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001) (holding that a property interest in a contractual claim "can be fully protected by an ordinary breach-of-contract suit"). But defendants have not moved to dismiss Hummel's procedural-due-process claim on that basis; instead, they have argued only that Hummel did not have a protected property interest in his license—an argument that the Court has rejected. Thus, the Court denies the motion of the individual defendants to dismiss Hummel's official-capacity claims insofar as those claims allege a

deprivation of procedural due process and seek prospective declaratory or injunctive relief.

### 4. Qualified Immunity

Hummel has also sued Spanier, Wiatrowski, and Cortilet in their individual capacities seeking an injunction, declaratory relief, and damages.  As an initial matter, Hummel cannot obtain injunctive or declaratory relief from defendants in their individual capacities.  Hummel seeks a declaration that he is entitled to a revocation hearing and an injunction "precluding the Defendants from further impugning" his right to due process.  ECF No. 15 at 10.  But Spanier, Wiatrowski, and Cortilet do not have authority in their *individual* capacities to grant Hummel a hearing or reinstate his license.[5]  As a result, the only relief that Hummel can obtain from these defendants in their individual capacities is damages.

As to Hummel's individual-capacity claims for damages, Spanier, Wiatrowski, and Cortilet argue that they are shielded by the doctrine of qualified immunity.

---

[5]*See Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief."); *Greenawalt v. Ind. Dep't of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005) ("[S]ection 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity."); *cf. Am. Civil Liberties Union of Minn. v. Tarek ibn Ziyad Acad.*, 788 F. Supp. 2d 950, 959 (D. Minn. 2011) (allowing claims for prospective injunctive relief against defendants in their individual capacities to proceed because defendants' actions were taken "both within and outside the scope of their official duties").

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson*, 555 U.S. at 231 (quoting *Harlow*, 457 U.S. at 818). The doctrine "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Kiesling v. Holladay*, 859 F.3d 529, 533 (8th Cir. 2017) (quotations and citations omitted).

As to Wiatrowski and Cortilet, the Court finds that the amended complaint fails to plead sufficient facts that, if true, would overcome qualified immunity. The amended complaint alleges that both defendants were "aware of the Plaintiffs' right to due process," "had direct and personal involvement in [the] decision to revoke the License," and "consented to [MDA's] denial of the Plaintiffs' rights." ECF No. 15 at 3. Further, the amended complaint alleges that a reasonable officer in defendants' positions "would have understood that the denial of . . . a hearing violated the Plaintiffs' constitutional rights." *Id*. But the amended complaint does not plead a single fact in support of these allegations; it does not, for example, explain the nature of Wiatrowski's and Cortilet's involvement in the decisions to revoke Hummel's license and to refuse his demand for a hearing. "Threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements," are not sufficient to overcome

qualified immunity. *Iqbal*, 556 U.S. at 678.

As to Spanier, the Court finds that Hummel has sufficiently pleaded that Spanier

was involved in the decision to revoke Hummel's license. The amended complaint

plausibly alleges (and the record reflects, ECF No. 19 at 26-33) that Spanier "was the

individual responsible for drafting, signing and sending the letter to the Plaintiffs

whereby the MDA revoked the License." ECF No. 15 at 2. The amended complaint also

plausibly alleges that Spanier was the MDA employee responsible for deciding not to

grant Hummel a revocation hearing. *Id*.

What the amended complaint fails to plausibly allege is that Spanier violated a

right of Hummel's that was "so clearly established at the time that a reasonable official

would have understood that his conduct was unlawful under the circumstances." *Kahle*

*v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007). Although the Court interprets the MOU to

give Hummel a constitutionally protected interest in his license, the MOU is far from

clear on the matter. A reasonable official in Spanier's position could have determined

that MDA had the authority to revoke Hummel's license without affording him any

type of hearing based on the language in the MOU giving MDA the right to de-register

licensed sites "at any time and for any reason." ECF No. 19 at 5-6; *see Anderson v.*

*Creighton*, 483 U.S. 635, 639-40 (1987) ("[W]hether an official protected by qualified

immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action.").[6]

Under the circumstances, the Court cannot find that Spanier acted contrary to clearly established law when he revoked Hummel's license and refused to provide either a pre- or post-revocation hearing. As plaintiffs' counsel acknowledged at the hearing on defendants' motion to dismiss, "[t]his is new to everybody." The fact that Spanier interpreted the ambiguous MOU differently than the Court provides no reason to believe that he is plainly incompetent or knowingly violated the law. Hummel has therefore failed to plead sufficient facts to overcome Spanier's qualified immunity.

For these reasons, Hummel's individual-capacity claims for damages against Spanier, Wiatrowski, and Cortilet are dismissed.

### 5. State Constitutional Claims

Finally, Hummel alleges that he has been deprived of procedural and substantive due process in violation of Article I, Section 7 of the Minnesota Constitution. There is, however, "no private cause of action for violations of the Minnesota Constitution." *Eggenberger v. W. Albany Twp.*, 820 F.3d 938, 941 (8th Cir. 2016) (quotations and citations

---

[6]Spanier might also have determined that, even if Hummel had a constitutionally protected interest in his license, Hummel's ability to challenge the revocation of his license by filing a breach-of-contract action gave him all of the process that he was due. *See Lujan*, 532 U.S. at 196 (holding that a property interest in a contractual claim "can be fully protected by an ordinary breach-of-contract suit").

omitted).  Hummel's claims under the Minnesota Constitution are accordingly dismissed.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT defendants' motion to dismiss [ECF No. 17] is GRANTED IN PART and DENIED IN PART as follows:

1.  With respect to plaintiffs' claims against defendants Petersen, Spanier, Wiatrowski, and Cortilet in their official capacities seeking prospective injunctive and declaratory relief to protect plaintiffs from deprivation of procedural due process in violation of the Fourteenth Amendment, the motion is DENIED.

2.  With respect to (a) all of plaintiffs' claims against MDA and (b) plaintiffs' claims against defendants Petersen, Spanier, Wiatrowski, and Cortilet in their official capacities seeking damages, the motion is GRANTED, and those claims are DISMISSED WITHOUT PREJUDICE for lack of subject-matter jurisdiction.

3.  With respect to plaintiffs' remaining claims, the motion is GRANTED, and those claims are DISMISSED WITH PREJUDICE.

Dated:  January 2, 2020          s/Patrick J. Schiltz

Patrick J. Schiltz
United States District Judge